UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA GUEVARA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:22-cv-00490-CDB (SS)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRM THE COMMISSIONER OF SOCIAL SECURITY'S DECISION<br><br>14-DAY DEADLINE<br><br>(Docs. 18, 20)<br><br><u>Clerk of the Court to Assign District Judge</u> |

Plaintiff Virginia Guevara ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 18, 20). Upon review of the Administrative Record ("AR") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## I.    BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

Plaintiff filed a Title XVI application for supplemental security income on August 19, 2019. (AR 187-98). Plaintiff's application was denied initially and upon reconsideration, and

1    Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 60-91, 106).  On

2    May 13, 2021, ALJ Laureen Penn held a hearing, during which Plaintiff, represented by counsel,

3    and an independent vocational expert testified.  (AR 30-59).  The ALJ issued her decision on June

4    2, 2021, finding Plaintiff not disabled.  (AR 13-23).  On February 18, 2022, the Appeals Council

5    declined Plaintiff's request for review.  (AR 1-3).

6        In her decision, the ALJ engaged in the five-step sequential evaluation process set forth by

7    the Social Security Administration.  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ

8    found Plaintiff had not engaged in substantial gainful activity since August 19, 2019, the

9    application date.  (AR 15).  At step two, the ALJ determined that Plaintiff had the following

10   severe impairments: "cervical and lumbar degenerative disc disease with lumbar radiculopathy

11   status/post-fusion surgery, degenerative joint disease of the right shoulder, and obesity."  (AR

12   15).  The ALJ concluded Plaintiff's anxiety disorder and depressive disorder did "not cause more

13   than minimal limitation in the claimant's ability to perform basic mental work activities" such

14   that they were non-severe.  (AR 16).  In reaching this conclusion, the ALJ cited the lack of

15   allegations of difficulty with memory and memory deficits in the record; the lack of evidence of

16   aberrant behavior or panic attacks; Plaintiff's ability to maintain appropriate attention and

17   concentration without noted deficits; Plaintiff's ability to maintain appropriate mood and affect at

18   treatment visits despite reports of depressive and anxious symptoms; Plaintiff's minimal mental

19   health treatment; and Plaintiff's daily social activities.  (AR 16).  The ALJ also relied on the

20   administrative agency psychological consultants' opinions, which both concluded Plaintiff had no

21   severe mental impairments.  (AR 17).

22       At step three, the ALJ found that Plaintiff did not have an impairment, or combination of

23   impairments, that met or medically exceeds the severity of one of the listed impairments in 20

24   C.F.R. Part 404, Subpart P, Appendix 1.  (AR 17-18).  The ALJ specifically discussed listings

25   within the musculoskeletal disorders category.  (AR 17).

26       The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform

27   light work "except the claimant can stand and/or walk for four hours and sit for six hours out of

28   an eight-hour workday and would need a sit/stand option every thirty minutes while at the

2

workstation." (AR 18).  Additionally, Plaintiff could "occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds;" "occasionally balance, stoop, kneel, crouch, and crawl;" "frequently reach overhead with the right upper extremity;" and "frequently finger and handle bilaterally," but never have concentrated exposure to hazards, such as unprotected heights and moving machinery.  (AR 18).

In formulating the RFC, the ALJ considered Plaintiff's allegations of "difficulty with lifting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, using her hands, concentration, and completing tasks."  (AR 18).  The ALJ also considered Plaintiff's testimony that she used a walker for a few weeks following surgery on her back, after which she continued to experience sciatica and tailbone pain as well as shoulder pain; she experienced increased depression due to the Covid-19 pandemic and recently started taking medication for such; and "she could only lift ten to fifteen pounds, used a shower chair, and had to change positions every fifteen to thirty minutes."  (AR 18).  The ALJ concluded that while Plaintiff's impairments could be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 19).

The ALJ discussed the medical record in support of her conclusion to discount Plaintiff's testimony.  Concerning Plaintiff's lower extremity functioning, the ALJ indicated that while medical records reflected complaints of pain and numbness, reduced range of motion, and positive straight leg tests leading up to Plaintiff's spinal surgery in July 2020, the records also reflected Plaintiff was "ambulating in a normal fashion" with normal gait and strength."  (AR 19). After surgery, Plaintiff initially reported doing great but eventually began to complain about lower back soreness and buttock pain but denied taking pain medications.  (AR 19).  Based on Plaintiff's lumbar impairments and her obesity, the ALJ included the standing/walking limitations and other postural limitations in the RFC.  (AR 19).  The ALJ also considered the records regarding Plaintiff's upper extremity functioning, and concluded they further supported the postural limitations.  (AR 20).

As to the specific reasons for rejecting Plaintiff's testimony, the ALJ explained that "her

3

1    specifically alleged inability to lift more than ten to fifteen pounds is not entirely consistent with

2    the evidence given her normal gait and strength and only mild cervical and shoulder arthritis,"

3    and Plaintiff did not need an assistive device outside of the time she was recovering from surgery.

4    (AR 20).  As to Plaintiff's "alleged depression and difficulty with concentration and completing

5    tasks," the ALJ concluded such was not consistent with the record based on Plaintiff's minimal

6    mental health treatment and treatment notes showing "generally normal memory, behavior,

7    concentration, and mood despite some reported symptoms of depression and anxiety recently

8    controlled with medication."  (AR 20).

9        The ALJ found the administrative agency medical consultants' opinions to be

10   unpersuasive because while they were "supported by rationale based on a review of the evidence

11   available at the time of determination," they were not entirely consistent with subsequent

12   evidence of Plaintiff's "reported numbness and weakness prior to lumbar surgery and post-

13   surgical leg and tailbone pain supportive of the reduced stand/walk and a sit-stand opinion."  (AR

14   21).

15       At step four, the ALJ found that Plaintiff was capable of performing her past relevant

16   work as a receptionist both as actually performed and as performed in the national economy.  (AR

17   21-22).  Alternatively, the ALJ concluded at step five that jobs existed in significant numbers that

18   Plaintiff could perform, including as an information clerk, general office clerk, file clerk, or order

19   clerk.  (AR 22-23).  Thus, the ALJ concluded that Plaintiff had not been under a disability from

20   August 19, 2019, through the date of the decision.  (AR 23).

21       **B.  Medical Record and Hearing Testimony**

22       The relevant hearing testimony and medical record were reviewed by the undersigned and

23   will be referenced below as necessary to the undersigned's recommendation.

24   **II.    STANDARD OF REVIEW**

25       A district court's review of a final decision of the Commissioner of Social Security is

26   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

27   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

28   is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (*Id*. at 1159) (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." (*Id*.) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. (*Id*.)

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. (*Id*.). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." (*Id*) (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  (*Id.*).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application.  (Doc. 1).  Plaintiff raises the following issues:

1. The ALJ's RFC is not supported by substantial evidence.  (Doc. 18 at 7).
2. The ALJ's finding that Ms. Guevara's mental impairments were "not severe" at Step Two is harmfully erroneous.  (*Id.*).

The undersigned addresses the second issue first so that the issues may be addressed in the order in which they arise in the sequential analysis.

### A.    Whether the ALJ Properly Concluded Plaintiff's Mental Impairments were "Not Severe"

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments."  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  A claimant has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The regulations define "basic work

activities" as "the abilities and aptitudes necessary to do most jobs," which include physical

functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as

understanding and remembering simple instructions; responding appropriately in a work setting;

and dealing with changes in a work setting.  20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to

dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  Thus, "[i]f an adjudicator is unable to

determine clearly the effect of an impairment or combination of impairments on the individual's

ability to do basic work activities, the sequential evaluation should not end with the not severe

evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28).  Moreover, once the ALJ finds the

claimant has at least one severe impairment at Step Two, the ALJ "must consider limitations and

restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*

*v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  Thus, if step two is resolved in the claimant's

favor, any error is harmless so long at the ALJ considered limitations from all of the claimant's

impairments when formulating the RFC.  *See Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir.

2020) (citing *Buck*, 869 F. 3d at 1048-49).

Plaintiff specifically challenges the ALJ's conclusion regarding her mental impairments,

which are analyzed under the "paragraph B" criteria in the context of four broad areas of

functioning: (1) understanding, remembering, or applying information; (2) interacting with

others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P., App. 1.  In rating the degree of limitation in each of the four

functional areas, an ALJ "will use the following five-point scale: None, mild, moderate, marked,

and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  If the ALJ rates the claimant's

limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that

[the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is

more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R.

§§ 404.1520a(d)(1), 416.920a(d)(1).  Legal error occurs when an ALJ neglects to document her

application of the paragraph B criteria or fails to include a specific finding as to the degree of

limitation in any of the four functional areas.  *See Keyser*, 648 F.3d at 725-26.  Substantial

1    evidence supports an ALJ's finding that a claimant's mental impairments are non-severe if (1) she

2    properly considered the claimant's mental health records, (2) she properly considered the

3    Paragraph B criteria, and (3) the record supports her findings regarding the non-severity.  *See*

4    *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022).

5          Here, Plaintiff argues that despite the "objective and subjective evidence of a diagnosed

6    psychiatric impairment that 'more than minimally' interferes with her concentration ability," the

7    ALJ determined her mental impairments were non-severe.  (Doc. 18 at 34).  Plaintiff asserts the

8    ALJ improperly relied on the lack of mental health treatment and instead of rejecting Plaintiff's

9    complaints, "the ALJ should have properly developed the record and obtained a consultative

10   psychiatric examination."  (*Id.* at 36).

11         Defendant responds that "the ALJ appropriately relied upon a lack of any significant

12   mental health complaints or treatments until just prior to the hearing, along with the assessments

13   of the State agency psychiatric consultants, to find Plaintiff's alleged mental health conditions

14   were non-severe."  (Doc. 20 at 19).  Defendant argues "Plaintiff's use of psychiatric medication is

15   hardly conclusive proof of severity" of her mental impairments, especially since Plaintiff

16   "testified that her symptoms had only started a few months before the hearing," such that Plaintiff

17   had not met her burden of "establishing a mental impairment that significantly limited her ability

18   to do basic work activities for at least twelve consecutive months."  (*Id.* at 20-21).  Additionally,

19   Defendant argues the ALJ properly relied on the lack of mental health treatment because "there is

20   no evidence to suggest that Plaintiff declined to pursue mental health treatment until shortly

21   before the hearing because she lacked the 'judgment' to recognize her need for treatment."  (*Id.* at

22   21).

23         Substantial evidence supports the ALJ's determination that Plaintiff's mental impairments

24   were not severe.  The ALJ considered Plaintiff's medical records, including multiple reports of

25   "no aberrant behavior noted," good insight and judgment with normal mood, and denials of

26   depression.  (AR 16, citing AR 801, 826, 1187, 1197, 1392, 1418, 1438, 1476, 1800, 1870, 1947,

27   1955, 1960, 1963, 1979, 2022, 2910).  The ALJ assessed Plaintiff's impairments under the

28   paragraph B criteria, concluding Plaintiff had no more than a mild limitation in any of the

1    functional areas.  (AR 16).  The records cited by the ALJ reflecting Plaintiff's denial of

2    depression and provider's reports of normal mood support this conclusion.

3        In support of her argument that the ALJ erred, Plaintiff points to an August 2017 record

4    indicating she complained of anxiety and depression and was referred to behavioral health

5    because she was not ready to try medications; test results from January and June 2020 indicating

6    her answers reflected moderate to severe depression and anxiety; and an April 2021 record where

7    she reported depression starting three months earlier and was prescribed medication.  (Doc. 18 at

8    32-33, citing AR 552, 556, 2928, 2907, 2937, 2944, 2945).  However, "[t]he mere existence of an

9    impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.

10   1993); *see Jose S. v. Kijakazi*, Case No. 2:20-cv-09561-GJS, 2022 WL 837416, at *2 (C.D. Cal.

11   Mar. 21, 2022) ("[A] diagnosis alone does not establish disability."); *Draiman v. Berryhill*, No.

12   CV 17-747-KS, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (finding that claimant's

13   "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to

14   demonstrate that she has a severe mental impairment" at step two).  The key inquiry is not

15   whether the claimant has a diagnosis for a mental impairment, but rather whether there are

16   findings by the medical sources to support that the mental impairment is "severe" under the

17   paragraph B criteria.  *See David F.M. v. Saul*, No. 5:20-CV-01362-AFM, 2021 WL 2646905, at

18   *3 (C.D. Cal. June 25, 2021) (citing *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985)).

19       Here, the records Plaintiff cites establish her own occasional complaints of anxiety and

20   depression without any evidence from medical sources that these impairments impacted her basic

21   work abilities as required to establish they were severe.  Additionally, these sporadic records over

22   the lengthy period covered by the record do not establish that Plaintiff's mental impairments

23   "have lasted or [were] expected to last for a continuous period of at least 12 months."  20 C.F.R.

24   §§ 404.1509, 416.909.

25       Further, even if the ALJ erred in finding Plaintiff's mental impairments were non-severe,

26   any error was harmless because the ALJ proceeded through the sequential analysis and

27   considered all of Plaintiff's impairments in formulating the RFC.  *E.g., Kim R.S. v. Kijakazi*, No.

28   5:21-cv-00546-JDE, 2022 WL 1405429, at *3 (C.D. Cal. May 4, 2022) (citing Buck, 869 F.3d at

1048-49) ("even if an ALJ erred by finding a particular impairment to be non-severe at Step Two, the error is harmless so long as the limitations of that impairment are considered when formulating the claimant's RFC.") (citing cases).  Plaintiff fails to point to any alleged limitations caused by her mental impairments that the ALJ failed to consider or include in the RFC.  The closest the Plaintiff comes is pointing to her own testimony that her *pain*—rather than her depression or anxiety—impacts her concentration and memory.  (Doc. 18 at 33-34 (citing AR 44-45)).  However, as discussed below, the ALJ provided clear and convincing reasons for rejecting Plaintiff's symptom testimony.

**B.  Whether the RFC is Supported by Substantial Evidence**

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because (1) "the ALJ had a duty to develop the record and send [Plaintiff] for an orthopedic examination in order to obtain an expert assessment of her functioning post-multiple invasive surgeries, rather than use her lay knowledge to tack on further restrictions to the State Agency RFC opinion;" and (2) the "ALJ's rejection of [Plaintiff's] 'allegations of a less than sedentary ability to sit, stand and walk status-post surgery is not supported by the requisite 'clear and convincing' evidence."  (Doc. 18 at 15, 27).

*i.    Duty to Develop the Record*

Plaintiff first argues the ALJ had a duty to further develop the record because she underwent two surgeries after the state agency consultants' review of the record.

Generally, "[t]he claimant has the burden of proving that she is disabled." *Smolen*, 80 F.3d at 1288.  However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered … even when the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Further, "[w]hen a claimant is not represented by counsel, this responsibility is heightened." *Id.*  This is because "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)).  In particular, the ALJ's duty to develop the record is heightened where the claimant may be mentally ill and thus unable to protect her own

1    interests. *Tonapetyan v. Halter*, 242 F.3d 1133, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*,

2    975 F.2d 558, 561 (9th Cir. 1992)).

3        Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there

4    is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

5    evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427

6    F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v.

7    Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not

8    ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ

9    was not required to re-contact Brown's doctors or further develop the record.").

10        Here, Plaintiff argues that the ALJ impermissibly used "her lay judgment to review nearly

11   a year of raw medical evidence and formulate a function-by-function RFC assessment." (Doc. 18

12   at 21). Plaintiff asserts the evidence not reviewed by a medical professional includes two surgical

13   reports and post-op treatment records. (*Id.* at 22-24).

14        Defendant responds that "the Commissioner's regulations are abundantly clear that the

15   ALJ is permitted—indeed, required—to independently review and interpret the medical evidence

16   in assessing Plaintiff's RFC, and is not limited to doing so only through the lens of a physician's

17   opinion." (Doc. 20 at 12) (record citation omitted). Defendant argues the ALJ "considered all

18   relevant evidence in the record as the regulation directs, including the later medical evidence that

19   Plaintiff purports to rely upon," and, contrary to Plaintiff's argument that "her back surgery [was]

20   essentially a failed procedure," the post-operative evidence shows overall improvement consistent

21   with the RFC. (*Id.* at 14-15). Defendant asserts the ALJ did not have a duty to further develop

22   the record because "Plaintiff has not alleged any gaps or ambiguities in the record." (*Id.* at 16).

23        Based on the records cited by the ALJ, substantial evidence supports the assigned RFC.

24   Plaintiff is correct that "[a]n ALJ is not allowed to use his own medical judgment in lieu of that of

25   a medical expert." *Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1009-10 (E.D. Cal. 2017)

26   (collecting cases). However, there is nothing in the ALJ's decision indicating that she interpreted

27   raw medical data or relied on her own medical judgment in constructing the RFC. Rather, the

28   ALJ relied mostly on Plaintiff's own reports within the medical records that she had overall

improvement following the surgeries.  (AR 19, citing AR 1950, 1951, 1955).  Nor is there anything suggesting to the Court that the record was ambiguous or inadequate as would be necessary to trigger the ALJ's duty to further develop the record.  *See Mayes*, 276 F.3d at 459-60.  Rather, the ALJ relied on the state agency medical opinions, acknowledged Plaintiff had undergone surgeries since the experts reviewed the record and reported post-surgical leg and tailbone pain, and imposed limitations *greater* than those opined by the experts based on Plaintiff's complaints.  (AR 19-21).  Further, because the additional limitations resulted in a narrower RFC than that considered by the experts, any alleged error in imposing the additional limitations was harmless.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (finding "overinclusion of debilitating factors" in hypothetical to vocational expert that were not included in the ultimate RFC was "harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration").

### ii.    Rejection of Plaintiff's Symptom Testimony

Plaintiff next argues the ALJ erred in rejecting her symptom testimony, specifically with respect to her allegations concerning her ability to sit, stand, and walk.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (internal quotation marks omitted).  "The claimant is not required to show that this impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

1   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

2   undermines the claimant's complaints." *Id.*; *see Thomas*, 278 F.3d at 958 ("[T]he ALJ must make

3   a credibility determination with findings sufficiently specific to permit the court to conclude that

4   the ALJ did not arbitrarily discredit claimant's testimony.").

5       However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the

6   ALJ's rational is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th

7   489, 499 (9th Cir. 2022). An ALJ's reasonings as to subjective testimony "must be supported by

8   substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

9   1995); *see Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our

10  next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony

11  is supported by substantial evidence under the clear-and-convincing standard.").

12      Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably

13  be expected to cause her alleged symptoms but rejected her testimony regarding the severity of

14  her symptoms with respect to lifting, sitting, standing, and walking. (AR 19). The ALJ discussed

15  MRI evidence of multilevel degenerative changes in Plaintiff's lumbar spine but noted that while

16  Plaintiff had radicular pain and numbness, she was ambulating in a normal fashion and had 5/5

17  strength. (AR 19, citing AR 799, 802). Examinations showed positive straight leg raise testing

18  and reduced range of lumbar motion, but Plaintiff continued to exhibit normal gait and strength

19  through her spinal surgery in July 2020. (AR 19, citing AR 1122, 1386, 1390, 2903, 2908, 2917,

20  2922, 2929). One month after surgery, Plaintiff reported doing great, walking thirty minutes

21  daily, and not taking anything for pain. (AR 19, citing AR 1955). Three months post-surgery,

22  Plaintiff had "some lower back soreness after physical therapy and was taking tramadol as

23  needed." (AR 19, citing AR 1981). At six-months, Plaintiff was considering restarting physical

24  therapy due to "buttock pain," but she was not taking medication and denied radiculopathy,

25  numbness, tingling, and weakness. (AR 19, citing AR 1980). The ALJ found these records

26  supported the limitation to standing/walking four hours out of an eight-hour day with a sit/stand

27  option to change positions every thirty minutes. (AR 19). In explaining why the record did not

28  support the extent of the limitations alleged by Plaintiff, the ALJ noted that Plaintiff's reports of

1   buttock/tailbone pain after sitting and leg pain after walking "were made during telehealth

2   consultations due to the pandemic so there are no physical examinations associated with them, but

3   they have been accounted for in the residual functional capacity by the sit/stand option."  (AR

4   20).

5        Plaintiff argues that despite her testimony that her pain post-surgery severely impacted her

6   ability to sit, stand, and walk, the ALJ failed to explain how a "sit/stand every 30 minutes option"

7   in the RFC "accommodates the functionality of a person who is limited to sitting, standing and

8   walking for 15 to 30 minutes maximum at a time, requiring a 10 to 15 minutes break to lie down

9   in between each activity, totaling only 3 hours a day, performing these activities in 'very short

10  trips,' spending the remainder of the time lying down for a total of 4 to 5 hours during the day."

11  (Doc. 18 at 27-28 (record citation omitted)).  Plaintiff argues that her testimony was consistent

12  with a September 10, 2020 physical therapy record the ALJ failed to acknowledge.  (*Id.* at 29).  To

13  the extent the ALJ rejected Plaintiff's testimony because she "found the other 'telehealth' post-

14  surgical examinations insufficient, because they did not come from an examining physician,"

15  Plaintiff argues the ALJ should have ordered a consultive examination rather than reject her

16  testimony.  (*Id.* at 29-30).

17       Defendant responds "the ALJ appropriately relied upon Plaintiff's reports of improvement

18  after her surgery, and examination findings including a normal gait and full motor strength in

19  evaluating Plaintiff's testimony."  (Doc. 20 at 16).  While "Plaintiff extensively summarizes her

20  own testimony and allegations," Defendant asserts her argument amounts to an improper request

21  that the Court reweigh the evidence.  (*Id.*).

22       As Defendant argues, the ALJ sufficiently explained her reasons for discounting

23  Plaintiff's symptom testimony based on evidence in the record.  The Court can readily follow her

24  reasoning and meaningfully review those reasons.  *See, e.g., Guthrie v. Kijakazi*, No. 21-36023,

25  2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843,

26  851 (9th Cir. 2022) (stating that the court considers "the ALJ's full explanation" and the "entire

27  record")); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7

28  (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving

specific findings followed a conventional organization for the ALJ's decision writing which is sufficiently clear for judicial review).  Specifically, the ALJ's decision makes clear that she credited Plaintiff's complaints of pain following her surgery and included the sit/stand limitation to accommodate those complaints, but found that further limitations were not warranted based on the lack of objective evidence to support Plaintiff's complaints and Plaintiff's own prior statements to her providers that she was improving following surgery.

To the extent Plaintiff argues the ALJ failed to consider a single physical therapy record that supported her testimony, the ALJ was not required to discuss every piece of evidence in rendering her decision.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). While this record may have supported a different conclusion from the ALJ, it is not for this court to "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).  Rather, "[w]hen the evidence can rationally be interpreted in more than one way, the court must uphold the ALJ's decision." *Id.* at 1115-16 (alterations omitted.

Overall, the ALJ credited Plaintiff's testimony and included the sit/stand limitation, and provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony that she was more limited in her ability to sit and stand.  Substantial evidence supports the ALJ's decision such that it must be affirmed.

**IV.    ORDER AND RECOMMENDATIONS**

The Clerk of the Court is **DIRECTED** to randomly assign a district judge to this action.

For the reasons stated above, the undersigned **RECOMMENDS** that :

1.  Plaintiff's Motion for Summary Judgment (Doc. 18) be DENIED;

2.  The ALJ's decision be AFFIRMED;

3.  The Clerk of Court be directed to enter judgment in favor of Defendant and close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **14 days** of being served with these findings and recommendations, the parties may file written objections

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 14, 2025**

UNITED STATES MAGISTRATE JUDGE

17